Page 2

FILED
JAMES BONINI
CLERK

05 APR 11 PM 4:43

U.S. DISTRICT COURT
SOUTHERN DIST OHIO
WEST DIV CINCINNATI

**MOTION UNDER 28 U.S.C. § 2255 TO VACATE, SET ASIDE, OR CORRECT**
**SENTENCE BY A PERSON IN FEDERAL CUSTODY**

1:05 CV 245

| United States District Court | District: Southern District of Ohio Western Division |
|---|---|
| Name (under which you were convicted): Gregory Allen Conn | Docket or Case No.: CR-1-02-96-1 |
| Place of Confinement: Federal Medical Center, P.O. Box N600, Lexington, KY 40512 | Prisoner No.: 03599-061    WEBER, J. |

UNITED STATES OF AMERICA          Movant (include name under which convicted)

v.     Gregory Allen Conn

## MOTION

1. (a) Name and location of court that entered the judgment of conviction you are challenging: District Court of the United States, Southern District of Ohio, Western Division, Cincinnati, Ohio.

   (b) Criminal docket or case number (if you know): CR-1-02-96-1

2. (a) Date of the judgment of conviction (if you know): 01/10/03

   (b) Date of sentencing: 01/10/03

3. Length of sentence: Sixty-Three months (63)

4. Nature of crime (all counts): Count 1 - Attempt to manufacture, distribute or dispense a Schedule III Controlled Substance, in violation of Title 21 USC §§ 846, 841 (a)(1). Count 2 - Maintaining a place for the purpose of manufacturing a Schedule III Controlled Substance in violation of 21 USC § 856. Count 3 - Substantial Risk to Human Life in violation of 21 USC § 858.

5. (a) What was your plea? (Check one)

   (1) Not guilty ☐          (2) Guilty ☑          (3) Nolo contendere (no contest) ☐

   (b) If you entered a guilty plea to one count or indictment, and a not guilty plea to another count or indictment, what did you plead guilty to and what did you plead not guilty to? Plead Guilty to Count 1 and 2 and was enhanced two points. § 2 D.1.(b)(1) Count 3 was not plead guilty to.

6. If you went to trial, what kind of trial did you have? (Check one)    Jury ☐    Judge only ☐

7. Did you testify at a pretrial hearing, trial, or post-trial hearing?    Yes ☐    No ☑

8.  Did you appeal from the judgment of conviction?     Yes ☐     No ☐

9.  If you did appeal, answer the following:

    (a) Name of court: _Southern District of Ohio, Western Division_

    (b) Docket or case number (if you know): _____

    (c) Result: _No Reply_

    (d) Date of result (if you know): _____

    (e) Citation to the case (if you know): _____

    (f) Grounds raised: _Described injustices in my case thru a letter to the courts dated 11/19/03._
_Note: Within 10 days of judgement Ignorant of Law. Frustrated after previous_
_counsel dismissed my claims as "More Details"_

    (g) Did you file a petition for certiorari in the United States Supreme Court?     Yes ☐  No ☐

        If "Yes," answer the following:

        (1) Docket or case number (if you know): _____

        (2) Result: _____

        (3) Date of result (if you know): _____

        (4) Citation to the case (if you know): _____

        (5) Grounds raised: _____

10. Other than the direct appeals listed above, have you previously filed any other motions, petitions, or applications concerning this judgment of conviction in any court?

    Yes ☑  No ☐

11. If your answer to Question 10 was "Yes," give the following information:

    (a) (1) Name of court: _Southern District of Ohio, Western Division_

        (2) Docket or case number (if you know): _____

        (3) Date of filing (if you know): _12/07/03 and 12/16/03_

        (4) Nature of the proceeding: _Ignorant of Law. Wrote letters to the Courts_

        (5) Grounds raised: _12/07/03 - Asked for assistance in obtaining legal work from previous_

counsel and Pleaded for extension of time to file.

12/16/03 - Described negligence of previous counsel, asked for assistance p obtain
Legal work from previous counsel, and pleaded for extension of time to file

(6) Did you receive a hearing where evidence was given on your motion, petition, or application?

Yes ☐  No ☑

(7) Result: __NO Reply__

(8) Date of result (if you know): _____

(b) If you filed any second motion, petition, or application, give the same information:

(1) Name of court: __Southern District of Ohio Western Division__

(2) Docket or case number (if you know): __Docket #28__

(3) Date of filing (if you know): __03/23/04__

(4) Nature of the proceeding: __Motion for Extension of Time to File for Habeus Relief__

(5) Grounds raised: __Was taken from BOP custody per State Writ for 4 months.__
__Denied paperwork and access to Legal Library during that time.__

__On or about 04/05/04. Attempted to File § 2255 to Southern District of__
__Ohio, Western Division. 2255 was returned with refusal to file letter.__

(6) Did you receive a hearing where evidence was given on your motion, petition, or application?

Yes ☐  No ☑

(7) Result: __Denied__

(8) Date of result (if you know): __03/25/04__

(c) Did you appeal to a federal appellate court having jurisdiction over the action taken on your motion, petition, or application?

(1) First petition:     Yes ☐  No ☐

(2) Second petition:   Yes ☑  No ☐

(d) If you did not appeal from the action on any motion, petition, or application, explain briefly why you did not:

Ignorant of Law and it's procedures.

12. For this motion, state every ground on which you claim that you are being held in violation of the Constitution, laws, or treaties of the United States. Attach additional pages if you have more than four grounds. State the facts supporting each ground.

GROUND ONE: _Ineffective Counsel - Failure to Challenge Indictment_

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.): _____
_See Brief_

(b) **Direct Appeal of Ground One:**

  (1) If you appealed from the judgment of conviction, did you raise this issue?

  Yes ☐ No ☐

  (2) If you did not raise this issue in your direct appeal, explain why: _See Brief_

(c) **Post-Conviction Proceedings:**

  (1) Did you raise this issue in any post-conviction motion, petition, or application?

  Yes ☐ No ☐

  (2) If your answer to Question (c)(1) is "Yes," state:

  Type of motion or petition:_____

  Name and location of the court where the motion or petition was filed:_____

  Docket or case number (if you know):_____

  Date of the court's decision:_____

  Result (attach a copy of the court's opinion or order, if available):_____

  (3) Did you receive a hearing on your motion, petition, or application?

  Yes ☐ No ☐

(4) Did you appeal from the denial of your motion, petition, or application?

    Yes ☐  No ☐

(5) If your answer to Question (c)(4) is "Yes," did you raise this issue in the appeal?

    Yes ☐  No ☐

(6) If your answer to Question (c)(4) is "Yes," state:

Name and location of the court where the appeal was filed:_____

_____

Docket or case number (if you know):_____

Date of the court's decision:_____

Result (attach a copy of the court's opinion or order, if available):_____

_____

_____

(7) If your answer to Question (c)(4) or Question (c)(5) is "No," explain why you did not appeal or raise this

issue: _____

_____

_____

_____

_____

**GROUND TWO:** _Counsel's Erroneous Advice Against Going Through With The Suppression_

_Hearing_

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.): _____

    _See Brief_

_____

_____

_____

_____

_____

_____

_____

(b) **Direct Appeal of Ground Two:**

(1) If you appealed from the judgment of conviction, did you raise this issue?

    Yes ☐  No ☐

(2) If you did not raise this issue in your direct appeal, explain why: _See Brief_____

_____

(c) **Post-Conviction Proceedings:**

(1) Did you raise this issue in any post-conviction motion, petition, or application?

Yes ☐ No ☐

(2) If your answer to Question (c)(1) is "Yes," state:

Type of motion or petition: _____

Name and location of the court where the motion or petition was filed: _____

_____

Docket or case number (if you know): _____

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available): _____

_____

_____

(3) Did you receive a hearing on your motion, petition, or application?

Yes ☐ No ☐

(4) Did you appeal from the denial of your motion, petition, or application?

Yes ☐ No ☐

(5) If your answer to Question (c)(4) is "Yes," did you raise this issue in the appeal?

Yes ☐ No ☐

(6) If your answer to Question (c)(4) is "Yes," state:

Name and location of the court where the appeal was filed: _____

_____

Docket or case number (if you know): _____

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available): _____

_____

_____

(7) If your answer to Question (c)(4) or Question (c)(5) is "No," explain why you did not appeal or raise this issue: _____

_____

_____

_____

_____

GROUND THREE: _Ineffective Assistance of Counsel Advising to Plead Guilty_

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.): _____

_See Brief_

_____
_____
_____
_____
_____
_____
_____
_____

(b)  **Direct Appeal of Ground Three:**

    (1) If you appealed from the judgment of conviction, did you raise this issue?

        Yes ☐  No ☐

    (2) If you did not raise this issue in your direct appeal, explain why: _See Brief_____

_____

_____

(c)  **Post-Conviction Proceedings:**

    (1) Did you raise this issue in any post-conviction motion, petition, or application?

        Yes ☐  No ☐

    (2) If your answer to Question (c)(1) is "Yes," state:

    Type of motion or petition:_____

    Name and location of the court where the motion or petition was filed:_____

_____

    Docket or case number (if you know):_____

    Date of the court's decision:_____

    Result (attach a copy of the court's opinion or order, if available):_____

_____

_____

    (3) Did you receive a hearing on your motion, petition, or application?

        Yes ☐  No ☐

    (4) Did you appeal from the denial of your motion, petition, or application?

        Yes ☐  No ☐

    (5) If your answer to Question (c)(4) is "Yes," did you raise this issue in the appeal?

        Yes ☐  No ☐

    (6) If your answer to Question (c)(4) is "Yes," state:

    Name and location of the court where the appeal was filed:_____

_____

    Docket or case number (if you know):_____

    Date of the court's decision:_____

Result (attach a copy of the court's opinion or order, if available): _____

_____

_____

(7) If your answer to Question (c)(4) or Question (c)(5) is "No," explain why you did not appeal or raise this

issue: _____

_____

_____

_____

_____

**GROUND FOUR:** Ineffective Assistance of Counsel at Sentencing

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.): _____

See Brief _____

_____

_____

_____

_____

_____

_____

_____

_____

**(b) Direct Appeal of Ground Four:**

(1) If you appealed from the judgment of conviction, did you raise this issue?

Yes ☐ No ☐

(2) If you did not raise this issue in your direct appeal, explain why: See Brief _____

_____

_____

**(c) Post-Conviction Proceedings:**

(1) Did you raise this issue in any post-conviction motion, petition, or application?

Yes ☐ No ☐

(2) If your answer to Question (c)(1) is "Yes," state:

Type of motion or petition: _____

Name and location of the court where the motion or petition was filed: _____

_____

Docket or case number (if you know): _____

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available):_____

_____

_____

(3) Did you receive a hearing on your motion, petition, or application?

    Yes ❏  No ❏

(4) Did you appeal from the denial of your motion, petition, or application?

    Yes ❏  No ❏

(5) If your answer to Question (c)(4) is "Yes," did you raise this issue in the appeal?

    Yes ❏  No ❏

(6) If your answer to Question (c)(4) is "Yes," state:

Name and location of the court where the appeal was filed:_____

_____

Docket or case number (if you know):_____

Date of the court's decision:_____

Result (attach a copy of the court's opinion or order, if available):_____

_____

(7) If your answer to Question (c)(4) or Question (c)(5) is "No," explain why you did not appeal or raise this

issue: _____

_____

_____

_____

13. Is there any ground in this motion that you have <u>not</u> previously presented in some federal court? If so, which

ground or grounds have not been presented, and state your reasons for not presenting them: *See Brief*

_____

_____

_____

_____

_____

_____

14. Do you have any motion, petition, or appeal <u>now pending</u> (filed and not decided yet) in any court for the

judgment you are challenging? Yes ❏  No ❏

If "Yes," state the name and location of the court, the docket or case number, the type of proceeding, and the

issues raised. *Southern District of Ohio Western Division Cincinnati, Ohio. Motion to Obtain*

*Grand Jury Transcripts. Grand Jury in all likelihood given erroneous description of*

*events leading to Indictment. Also letters to the Court asking for written per-*

rmission to obtain Public Information from West Chester Ohio Police Department Which was refused until such permission from sentencing court was obtained.

15. Give the name and address, if known, of each attorney who represented you in the following stages of the judgment you are challenging:

(a) At preliminary hearing: _____

(b) At arraignment and plea: C. Ransom Hudson (Federal Public Defender) 2000 URS Center, 36 East Seventh St, Cincinnati, OH 45202

(c) At trial: _____

(d) At sentencing: C. Ransom Hudson

(e) On appeal: Pro-se

(f) In any post-conviction proceeding: C. Ransom Hudson

(g) On appeal from any ruling against you in a post-conviction proceeding: _____

16. Were you sentenced on more than one count of an indictment, or on more than one indictment, in the same court and at the same time? Yes ☑ No ☐

17. Do you have any future sentence to serve after you complete the sentence for the judgment that you are challenging?    Yes ☑ No ☐

(a) If so, give name and location of court that imposed the other sentence you will serve in the future: _____
State of Kentucky, Meade Co. District Court Brandenburg, KY

(b) Give the date the other sentence was imposed: 09|09|03

(c) Give the length of the other sentence: Ten Years (10)

(d) Have you filed, or do you plan to file, any motion, petition, or application that challenges the judgment or sentence to be served in the future?    Yes ☑ No ☐

18. **TIMELINESS OF MOTION:** If your judgment of conviction became final over one year ago, you must explain why the one-year statute of limitations as contained in 28 U.S.C. § 2255 does not bar your motion.*

_See Brief_

---

* The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") as contained in 28 U.S.C. § 2255, paragraph 6, provides in part that:

A one-year period of limitation shall apply to a motion under this section. The limitation period shall run from the latest of —

(1) the date on which the judgment of conviction became final;

(2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making such a motion by such governmental action;

(3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

Therefore, movant asks that the Court grant the following relief:  _See Brief_____

_____

_____

or any other relief to which movant may be entitled.


_____

**Signature of Attorney (if any)**


I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct and that this

Motion Under 28 U.S.C. § 2255 was placed in the prison mailing system on _April 7, 2005_____

_____ (month, date, year).


Executed (signed) on _April 7, 2005_____ (date).


_____

Signature of Movant


If the person signing is not movant, state relationship to movant and explain why movant is not signing this

motion. _____

_____

_____


\* \* \* \* \*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION


GREGORY A. CONN,

     Petitioner,                Docket No. CR-1-02-96-1

                                 Civil No. _____

vs.


UNITED STATES OF AMERICA,

     Respondent.


MEMORANDUM IN SUPPORT OF MOTION
PURSUANT TO 28 U.S.C. § 2255


     Now comes the Petitioner Gregory A. Conn, pro-se and moves this Honorable Court to vacate, set aside or correct sentence. In support of this motion Petitioner states the following:


1.    I am the defendant in the above captioned case.

2.    The Petitioner request the right to be allowed to amend and or supplement this petition upon evidence becoming available from pending motions/requests for relevant information in this case.

3.    The Petitioner requests that his pleadings be granted liberal construction pursuant to Haines v. Kerner, 404 U.S. 519 (1972) and; Malone v. Colyer, 710 F.2d 248 (6th Cir. 1983) (holding that pro se litigants' pleadings are to be liberally construed to suggest the strongest argument

possible... allegations are to be taken as true... if
the court can reasonably read pleadings to state a valid
claim in which relief can be premised upon, it must do
so despite lack of legal citations, improper snytax, ect..).

4.    It is my understanding from the Order received from the
Sixth Circuit Court of Appeals dated March 11, 2005, (See
Exhibit ___A___ ) that the Court of Appeals lacks jurisdic-
tion to consider the timeliness of a § 2255 motion until
the motion is actually filed by the district court.  This
appeal was in regards to the denial of a Motion For
Extension of Time from the District Court dated 3/25/04;
See Exhibit ___B___.  On or about 3/30/04 I submitted a
§2255 motion to the District Court which was returned
unfiled and refused.  See Exhibit ___C___.

5.    At this time, acting with all required due diligence, I
am attempting to properly file a §2255 motion again
containing tolling arguments and further claims for
relief which I pray will be heard on their merits as
justice would dictate and not procedurally barred.  See;
Murray v. Carrier, 477 U.S. 478, 488 (1986); Smith v.
Murray, 477 U.S. 527 (1986) and; Cone v. Bell, 359 F.3d
785, 802-03 (6th Cir. 2004) ("Although we have not
identified with precision what constitutes 'cause' to
excuse procedural default, we have acknowledged that in
certain circumstances counsel's ineffectiveness in failing
to preserve the claim for review... will suffice." cf.
Edwards v. Carpenter, 529 U.S. 446 (2000)).

I.  STATEMENT OF FACTS

On or about 1/10/03 I was sentenced in this Court to a sixty-three (63) month term with three (3) years of supervised release to follow.  On 1/19/03 I wrote this Court with claims of injustice in my case and particularly unjust treatment from those involved in my case, most specifically my own counsel.

Upon entering federal prison I was immediately confronted with state charges which arose from the federal offense.  On May 6, 2003 I was taken into Kentucky state custody pursuant to a writ of ad prosequendam.  I was not allowed to take any property, paperwork, legal documents, etc...  While in state custody, I was without any access to federal law materials and could only focus on the state prosecution, in which subsequently I received a ten (10) year sentence.  On September 9, 2003 I was returned to BOP custody.  At that time I began efforts to gather my paperwork regarding my federal sentence and conviction. In October, 2003, I contacted my federal counsel, C. Ransom Hudson, request specifically all information available in my case.  He refused.  On 12/07/03 I contacted the District Court pleading for assistance to obtain information from counsel in regards to my federal conviction.  At that time, I also requested for an extension in which to file an action in my federal case.  Just days before my filing deadline, it should be noted, that counsel did send some paperwork on my case.  On 12/16/03 I again wrote this Court pleading for assistance in obtaining more of my records and documents in my case.  In this document, I specifically outlined acts of negligence and incompentence during his

representation in the federal proceedings. I also renewed my request for an extension in which to submit a filing.

My rationale during the period between my pleadings sent on 12/16/03 and 3/18/04, the date I mailed a motion for extension of time, was simply that I had complete faith and confidence in the District Court itself to reply in some fashion. Finally, coming to realize the possibility that the Court would not respond, I acted in desperation and roughly drafted a motion for extension of time exercising all possible due diligence in an attempt to preserve the right to file.

On 3/25/04 the District Court denied my motion for extension of time noting that the Court would not issue a certificate of appealability in the matter. On or about 3/30/04 I sent a roughly drafted §2255 motion containing my claims and including why the filing provisions should be tolled in my case. Subsequently, my §2255 motion was returned unfiled with a letter of refusal from the Clerk.

Once again, acting in desperation and being a pro-se litigant, I sent a Notice of Appeal to the Court of Appeals. On 5/05/04 I sent a Memorandum Brief appealing the District Court's denial of the Motion For Extension of Time. This was the only thing I could appeal since the District Court had refused to file my §2255 motion. On 7/17/04 I amended my appeal to include a Blakely v. Washington, 542 U.S. _____ (2004) claim. On 3/14/05 I received the Order denying relief stating lack of jurisdiction as the reason for their Judgment.

## ARGUMENT

1.      Shortly after sentencing, I communicated with counsel specifically expressing my disappoint and dissatisfaction as to the injustices not only in my case in general but also to the sentence and the proceedings.  Counsel dismissed my desire to appeal with the same answer I had heard so often before, "mere details."  Being completely frustrated, I wrote a letter, within 10 days of sentencing it should be noted, to the District Court, See Exhibit ___()___, detailing my claims of disappointment and dissatisfaction of the injustices in my case.  This letter included details of the treatment I had received with much emphasis on my counsel.  See; Roe v. Flores-Ortega, 528 U.S. 470 (2000) (holding that counsel has a constitutionally imposed duty to consult with the defendant when there is reason to think that either (1) a rational defendant would want to appeal or (2) this particular defendant reasonably demonstrated to counsel that he was interested in appealing.)  Plainly, obviously, and most emphatically, I demonstrated not only to counsel, but to the Court as well, that I was interested in appealing.

In Ludwig v. U.S., 162 F.3d 456, 459 (6th Cir. 1998), the Court held that the prejudice component of the Strickland, infra, analysis is inapplicable because prejudice is presumed; "A lawyer's failure to file a requested appeal at the behest of a defendant is particularly problematic because it does not merely deprive the defendant of effective assistance of counsel, it deprives him of the assistance of counsel altogether.  Thus, the failure to perfect a direct appeal when requested by the defendant violates the Sixth Amendment without regard to the probability

of success on appeal."

2.    On 1/19/03 I wrote a letter to the District Court,
Exhibit __D__, expressing my disappointment with the injustices
in my case and with counsel.  See; U.S. v. Willis, 804 F.2d 961,
963 (6th Cir. 1986) ("In dealing with pro-se applications by
prisoners, the courts have generally been liberal in construing
as a notice of appeal any paper indicating an intent to appeal
filed within the ten day period, even though it may omit some
of the prescribed elements."  citing from Haines v. Kerner, 404
U.S. 519 (1972)).

3.    While released to the custody of the State of Kentucky for
a period of four (4) months (See Exhibit __E__), I was denied
access to any of my federal documents and or federal law.  Soon
after returning to federal custody, I wrote to previous counsel
requesting the work product and documents of my federal case.  I
wrote twice more to counsel again requesting work product and
documents during the next three months.  Counsel completely
ignored my requests until just days before my filing deadline.
I was ignorant of the filing timelines until October, 2003. Prior
to this I had been confronted with the Kentucky State charges
that demanded my strict attention.  I was however, extremely
diligent in pursuing the bare minimum of needed information.
Even to the point of writing letters to the District Court asking
for assistance in obtaining this critically needed information
and pleading for an extension of time, one on 12/07/03 (Exhibit

___F___ ), and another on 12/16/03 (Exhibit ___G___ ).  This showing
of the exercise of due diligence being a requisite for the test
of equitable tolling as set forth in Dunlap v. U.S., 250 F.3d
1001 (6th Cir. 2001).


4.      On 12/07/03 (Exhibit ___F___ ) and on 12/16/03 (Exhibit ___G___ )
I wrote letters to the District Court pleading for assistance in
obtaining critically needed information in which to make a filing
and for an extension in which to do so.  The 12/16/03 letter
emphasized the fact I was a pro-se litigant and briefly outlined
the alleged constitutional violations.  This, liberally construed
pursuant to Haines, supra, and Caver v. Straub, 349 F.3d 340 (6th
Cir. 2003), could have easily been interpreted as a motion for
relief.  Caver held that "given the less stringent standards and
active interpretation that are afforded to the filings of pro se
litigants... these aspects of Caver's application... fairly
presented the trial counsel ineffectiveness claim."  Id. at 347
See also; Urbina v. Thoms, 270 F.3d 292 (6th Cir. 2001) (holding
for courts to give active interpretation of pro se pleadings to
state a claim.).

     There can be no doubt that the defendant has been diligent
in voicing his claims throughout the proceedings.  See Letter
to Judge Webber dated 8-30-02 (Exhibit ___N___ ) in which the
defendant raised claims of counsel ineffectiveness before the
plea or sentencing.  This could and should have been interpreted
as a motion to dismiss counsel and reappoint counsel as it was
obvious that counsel was not pursuing issues as requested.

5.    To further support, at a bare minimum, defendant's claim
that he was entitled to equitable tolling as set forth in Dunlap,
supra, petitioner would submit the Order of the 6th Circuit Court
of Appeals (See Exhibit ___A___).  In this Order, the Court expli-
ctedly cites Green v. U.S., 260 F.3d 78, 82-83 (2nd Cir. 2001)
as holding that a pro-se litigant's motion for an extension of
time, liberally construed, contains allegations sufficient to
support a claim under 28 USC § 2255.  It cannot be disputed that
among the letters sent to the District Court, Conn set forth
many allegations sufficient to support not only his direct appeal
notice, but also set forth factual allegations that did set out
valid claims in which relief could be based upon.  In citing
Green, it would advance the reasoning and holdings that "Where a
motion, nominally seeking an extension of time, contains allega-
tions sufficient to support a claim under 2255, a district court
is empowered, and in some instances may be required, under Haines
to treat that motion as a substantive motion for relief..."
The Green Court also held that "the Court must review pro se
petitions with 'a lenient eye,' allowing borderline cases to
proceed..." and that "general objection of pro se defendant at
sentencing should have been construed liberally for preservation
purposes." See; Fleming v. U.S., 146 F.3d 88, 90 (2nd Cir. 1998);
U.S. v. Ben-Shimon, 249 F.3d 98, 103-04 (2nd Cir. 2001).

The remedy opined by the Green Court was to allow the
defendant 60 days from the denial (from lack of jurisdiction,
same as Conn's denial) by the Appeals Court to file his amended
motion for relief and that equitable tolling was appropriate.  It
should be the same here in the case at bar.

II:  STATEMENT OF FACTS INVOLVING OFFENSE

On July 10, 2002, at approximately 11:30 PM, I, Gregory A.
Conn, was attempting to make my way back to Interstate 75.  I
had gotten off I-75 trying to elude road construction, which had
traffic at a stand-still.  Just past an active ball field, I
noticed a ramp stating "to 75."  I merged onto this ramp, noti-
cing that I needed to be in the right hand lane in order to merge
onto I-75 south.  Using turn signals, and checking for oncoming
traffic, I attempted to merge into the right hand lane.  Unex-
pectedly, I incurred a slight brush with another automobile which
was passing rapidly on my right.  Immediately, I merged back left
in a proper manner.  There were bright lights shining directly
toward the road from the ball field.

At this time I noticed that it was a patrol car which I had
brushed against.  The officer turned on his flashing lights and I
pulled over behind the patrol car.  The Officer (Gutman) approached
my window and asked for my driver's license, registration, and
proof of insurance.  After acquiring this information, Officer
Gutman proceeded to the rear of my vehicle where another patrol
car had parked with lights flashing.  After about 5 to 10 minutes,
another Officer (Lovett) approached my window.  Officer Lovett
repeatedly asked me, "How much have you had to drink?"  I re-
sponded that I had, had two beers earlier in the day, but that it
had been several hours ago.  Lovett then returned to the rear of
my vehicle.  After approximately 10 minutes had passed, Lovett

returned to my window and instructed me to step out of my vehicle.
Following Lovett to the rear of my vehicle, Lovett asked me if I
would perform a few tests for him.  I replied, yes.  First test
being heel to toe.  I didn't perform perfectly, for I had been
traveling for quite some time and didn't have my legs about me
just yet.  Second test being standing on one foot with arms ex-
tended.  Unable to balance at first, but starting to get my legs
back in control.  I gained my balance and stood quite balanced.
Third test being to follow the ink pen with eyes only.  Lovett had
no complaint and instructed me to return to my vehicle.  After at
least 10 minutes had passed, Lovett again approached my windown
and again instructed me to step out of my vehicle.  He also in-
structed me to place my hands behind my back and, while handcuff-
ing me, explained that I was under arrest for DUI.  Upon Lovett
leading me to his patrol car, Gutman stopped us and, in a shocked
tone of voice asked, "your're not arresting him are you?"  Lovett
at this time stated that he would make me a deal; If you pass a
breath test?  I will bring you back to your truck.  He then pro-
ceeded to place me in the back of his patrol car.  After a short
period, the Officers began searching my vehicle, opening personal
luggage and the like.  One of the officers stated that he had
found a white powder substance.  Lovett instantly removed me from
his patrol car and peformed a personal body search.  After placing
me back into the patrol car, an officer approached and stated,
"there isn't going to be any problem with this gun being stolen,
is there?" My reply was no.  I was then taken to a police station

a short distance away. Lovett instructed me to blow into an in-toxilizer. Lovett reading the result of .000 admitted to me that he had known I wasn't intoxicated and had never smelled alcohol on me. But, he had a gut feeling that I might possibly have contra-band. Then stating that a DUI was the least of my worries now. I was interrogated at the scene after arrest, and later at the police station. I was never given a Miranda Warning until 4:30 AM, July 11, 2002. I wrote this on a form I was told to sign after being given the Miranda Warning. I gave no more statements after being given the Miranda Warning, now realizing my rights as I had never been in this position before.

Later that morning, July 11, 2002, I was taken to a jail near-by. On approximately July 12, 2002, I was taken to a courtroom. There I was charged with multiple charges. At that time I was ap-pointed a counse, Mr. Richard L. Hurchanik. After reviewing the case, counsel was confident that charges would be dropped due to police misconduct. Bond was set at approximately $40,000.00. I never attempted to post bond. Approximately two days later I was taken to a courtroom. Once again, counsel expressed confidence that charges would be dropped. This day the Judge did drop all charges, but added that Ohio State was giving the Federal Govern-ment 72 hours to pick me up. At this time counsel informed me that I was an informant and knew what was going on, or that some-body wanted me real bad. Approximately 69 hours later I was picked up by Federal Marshals and taken to Cincinnati, Ohio.

On July 16, 2002, I was taken to the Cincinnati Federal Courthouse before U.S. Magistrate Judge Hon. Jack Sherman, Jr., where an order of temporary detention pending trial was applied. I was also given an order appointing a federal Public Defender.

On July 19, 2002, I was again taken to Cincinnati federal Courthouse.  At this time I met my appointed counsel, C. Ransom Hudson, for the first time.  He explained that I was facing some serious charges.  A bond hearing was heard, and it was ordered that I be held without bond.

On August 1, 2002, I was again taken to the federal Courthouse and taken before U.S. Magistrate Judge, Hon. Timothy S. Hogan.  Upon entering the courtroom, I asked counsel (Mr. Hudson), to obtain for me the Discovery and Bill of Particulars.  Someone had told me that these would contain the evidence and testimony against me.  Once again bond was denied and a three-count indictment of charges was read by the Hon. Judge Hogan.

On or about August 8, 2002, I wrote to Mr. Hudson, again asking for the Discovery and Bill of Particulars.  I felt this was needed in order to set up a defense with counsel.  On or about August 19, 2002, Mr. Hudson did bring to me the Discovery.  He explained that he was unable to produce any other information at this time.  He added that because he didn't have my case file with him we would discuss a defense later.  Following this meeting, I called Mr. Hudson's office several times, but was unable to reach him.  I was eager to obtain the needed information and to discuss

a defense.   The next meeting I would have with Mr. Hudson was on August 29, 2002, at approximately 8:30 PM.   Mr. Hudson's first words were: I'm a day late and a dollar short.   Then he explained that we had only two days to prepare for the suppression hearing. This was the first time I became aware that such a hearing had been scheduled, and the date of the hearing.   I became angry and explained to Mr. Hudson that I had written a letter to the Hon. Judge Weber asking for new counsel.   I had written to Judge Weber on August 27,  2002, asking for new counsel.   I also explained to the Hon. Judge Weber that I thought my next court date was September 20, 2002, and, furthermore, had no idea as to the purpose of the hearing on that date.   Mr. Hudson proclaimed he had informed me of the hearings and dates.   These statements were untrue and only made me more angry.

On September 30, 2002, Mr. Hudson again visited me.   He explained that he was still my counsel and that he had filed suppression claims and gave me a copy.   Also, he gave me a copy of court procedures, admitting he should have given them to me some time ago.   Again, Mr. Hudson proclaimed that he had explained things all along.   I explained to Mr. Hudson that if he was just going to start lying again there was nothing else to discuss. Earlier this day, again, I had written to the Hon. Judge Weber, reiterating my prior pleading and asking for new counsel to be appointed due to extreme negligence of present counsel.

On September 16, 2002, I was taken to the suppression hearing.

At the federal courthouse, I was taken to a conference room where
Mr. Hudson asked my intentions. I stated that I was going to ask
for new counsel. Mr. Hudson strongly advised not to ask for new
counsel. Mr. Hudson also briefly showed me some paperwork per-
taining to my case; paperwork which was needed long before in
order to prepare a viable defense at suppression. Upon entering
the courtroom, I noticed there weren't any of the officers present
who had been involved in my arrest. Holding this as very odd, for
how could there be a suppression hearing with them? Mr. Hudson
continually stated that if I fired him that I would receive at
least 135 months. Mr. Hudson agains asked my intentions. I stated
that I wanted another attorney's opinion and was going to ask for
new counsel. I showed Mr. Hudson the speech I had prepared.
After reviewing the speech, Mr. Hudson proclaimed that none of
the things I had been asking for were available to him. The pro-
secution had just given the information to him. And that if I
told the judge this, that he would be very upset with the prose-
cutor, and that would cost me more time. At this time, I began
showing Mr. Hudson my statement of what actually had happened at
the scene of my arrest. I asked him to compare them to the state-
ments of the officers. They were inconsistent. Even the state-
ments of the officers at the scene were inconsistent. The DEA
agent's statement, which I thought had been used at the Grand Jury
proceeding were also conflicting and inconsistent with any of the
other statements. Mr. Hudson told me not to bite off my nose to
spite my face. Without even giving consideration to the facts

presented to him.  Mr. Hudson again stated that if I fired him
and/or went through with suppression; at best, I would receive
135 months.  Mr. Hudson, once again, asked my intentions.  My
statement was, "I know my rights were violated and this case
could be won on those bases." I was going to ask for new counsel.
At this time, Mr. Hudson told a lady that we were ready, also
stating to me that I was making a big mistake that was going to
cost me a lot of time.  At this point I was overcome with fear
because Mr. Hudson led me to believe that, regardless of my
rights, the prosecution could do as they pleased.  Being overcome
with duress, feeling very threatened, I told Mr. Hudson to ask
for a continuance.  Upon entering the courtroom, the Hon. Judge
Weber's first statements were to the concerns of letters he had
received from me and my family, asking for new counsel.  Mr.
Hudson stated the desire for a continuance.  I was overwhelmed
with fear and stated my desire to keep present counsel.  No ob-
jections were made concerning the continuance, and it was de-
cided that September 24, 2002, would be the suppression date.  Mr.
Hudson proclaimed that there would be no need to set a trial date,
that this case wouldn't get that far.  Despite these contentions,
the Hon. Judge Weber set a trial date of October 22, 2002.

On September 24, 2002, I was taken to the federal courthouse
for the suppression hearing.  A plea agreement was on the table,
but due to expire this day.  I had told no one of my intentions,
but had every intention of asking for new counsel.  Upon entering
the courtroom, once again, I noticed that no officers from the

of arrest were present.  I was being strongly advised by Mr.
Hudson not to fire him and not to go through with the suppres-
sion hearing.  Before the Hon. Judge Weber entered, the prose-
cutor, (Kenneth Parker), approached where Mr. Hudson and I were
sitting.  Mr. Parker stated that if I fired Mr. Hudson and/or
went through the suppression hearing, that he would see to it
that I received 195 months.  Adding, "Mark my words, it will
happen.  You have about two minutes to make your decision."  Once
again, I became overwhelmed with fear, for counsel all along had
led me to believe that the prosecutors could do as they pleased,
regardless of my rights being violated.  Giving in to heavy co-
ercion from both sides, I told Mr. Hudson that I would take the
plea.  I felt very let down by a system I had believed in all my
life.  The hearing was changed to a plea hearing.

Upon sentencing, on approximately January 9, 2003, argument
was brought as to the weight charged by the prosecution (2.02
grams versus 60. something mixture).  The Hon. Judge Weber's
questioning was to the point: Was the amount charged marketable
and/or consumable.  It was established that the mixture charged
contained substances not consumable.  Therefore, not marketable.
The next day, sentencing continued.  Prosecution stated that the
weight charged was consumable, even to the point of injection.
Mr. Hudson's arguments were unpersuasive, and the fact that the
indictment was based upon a DUI arrest in which the only substan-
tial evidence of my being intoxicated or not intoxicated, was a
BAC result of .000. Consequently,  the prosecution's weight

calculation was allowed and I was sentenced to 63 months.  Shortly after sentencing, I communicated with counsel expressing my disappointment in the injustices in my case and my dissatisfaction as to the sentencing, specifically counsel's failure to properly argue the drug weight as to what constituted "waste" that was erroneously attributed to me.  As usual and as before, my claims were dismissed as "mere details" by counsel C. Ransom Hudson.

Being very frustrated, unknowledgable of law, ignorant of the legal appeals process and not knowing which way to turn, I did on January 19, 2003 wrote a letter to the Hon. Judge Webber.  In this letter (See Exhibit ___O___ ) to Judge Webber, I explained what and how I thought my constitutional rights had been violated and my vast disappointment in the system and in my counsel.

Pursuant to the pro-se doctrine of Haines v. Kerner, supra; and the subsequent decisions in Becker v. Montgomery, 523 U.S. 757 (2001) ("Other opinions of this Court are in full harmony with the view that imperfections in noticing an appeal should not be fatal where no genuine doubt exists about who is appealing, from what judgment, to which appellate court."); also see Smith v. Barry, 502 U.S. 244 (1992) ("A document intended to serve as an appellate brief [filed within the specified time...] may qualify as the notice of appeal... Rule 3(c) provides that an appeal shall not be dismissed for informality of form or title of the notice of appeal.")  The district court should have construed this letter as a notice of appeal but did not do so thereby denying the defendant his only opportunity to directly appeal his unjust sentence.

ARGUMENT--INEFFECTIVE ASSISTANCE OF COUNSEL

In <u>Strickland v. Washington</u>, 466 U.S. 668 (1984), the Supreme Court established a two prong test to evaluate ineffective assistance of counsel claims.  To obtain relief a defendant must show (1) that counsel's performance fell below an objective standard of reasonableness and (2) that counsel's performance prejudiced the defendant, resulting in an unreliable or fundamentally unfair outcome of the proceedings.  The <u>Strickland</u> test does not require a certainty or even a preponderance of the evidence that the outcome would have been different, it requires only a "reasonable probability."

In the guilty plea context where it is asserted that the ineffective assistance induced the plea, the defendant must show that there is a reasonable probability that, but for counsel's errors and erroneous advice, he would not have pleaded guilty and would have insisted upon going to trial.  See; <u>Hill v. Lockhart</u>, 474 U.S. 52, 58-59 (1985).  <u>Hill</u> further held that a reviewing court must focus on whether counsel's alleged errors "have undermined the reliability and confidence of the result."  See; <u>McQueen v. Scroggy</u>, 99 F.3d 1302, 1311 (6th Cir. 1996).  This determination depends in large part on a prediction of what the outcome of a trial might have been, as well as whether the petitioner was materially misinformed about the relevant circumstances and likely consequences of the plea.  <u>Hill</u>, supra.

The foregoing and previously shown errors of counsel involve mixed questions of fact and law warranting a de novo review by the Court.  Many of the claims entail off the record exchanges between

counsel, petitioner and the prosecutor.  In light of these
serious allegations, an evidentiary hearing should convene to
permit petitioner to prove his claims.

FAILURE TO CHALLENGE INDICTMENT

      After reading the DEA agents' investigative report, Mr.
Hudson was made well aware by me that it contained false informa-
tion and, in all likelihood, that these reports were what was
presented to and used at the Grand Jury proceedings.  The
statements directly conflict with statements made by the arresting
law enforcement officers (Exhibits "I" and "J").  The DEA report
proclaims I was arrested for DUI and housed in the jail, and that
my truck was towed to an impound lot where an inventory search
uncovered the evidence that was used against me.  The two arresting
officers' reports conflict as well, but are clear on the fact that
my vehicle was searched at the arrest location.  The DEA report is
misleading to imply that the DUI offense was warranted and clearly
puts forth the assumption that I was guilty.  When in fact, because
I registered .000 on the BAC, my truck should have never been, and
would not have been towed.  It is apparent that this DEA report
was used by the prosecution in securing an indictment.  The
responses made by the prosecution against suppression filings
claims the same depiction od events.  I am still attempting to
obtain the Grand Jury transcripts and have a motion pending in the
matter.

      The statements made by law enforcement varied and conflicted
greatly.  Although these facts were pointed out to counsel, counsel
performed no discovery to obtain information which would have proven

that the arrest was illegal and a ploy, and that the subsequent
search was unconstitutional.  In Kimmelman v. Morrison, 477 U.S.
365 (1986), the Supreme Court held that "counsel has a duty to
bear such skill and knowledge as will render the trial a reliable
adversarial testing process," and that "such a complete lack of
pretrial preparation puts at risk both the defendant's right to
an ample opportunity to meet the case of the prosecution... and
the reliability of the adversarial process."  Id., at 386.
Petitioner is still attempting to obtain Grand Jury transcripts
that counsel should have obtained.  There is no excuse for this
"failure to make reasonable investigations or to make a reasonable
decision that would make particular investigations unnecessary."
Kimmelman, supra.  It is abundantlt clear tha counsel refused to
make even the smallest perfunctory investigations to develop facts
that would have benefitted his client.

COUNSEL'S ERRONEOUS ADVICE AGAINST GOING THROUGH WITH THE
SUPPRESSION HEARING.

      It is plain to see from any standpoint, that counsel had not
developed any facts adequately nor performed any investigations.
Simply put, he was not prepared.  Only a small portion of the
information was obtained and this was on the day of the hearing.
I pleaded with counsel that the reports contradicted and conflicted
and that the basis for the search was an illegal arrest of DUI.
Claims which could be proven due to the reports themselves and the
BAC result of .000 (See Exhibit  L  ).  Mr Hudson stated again, as
he had done so many times before; "Mere details Mr. Conn..."

I was returned to my vehicle after a field sobriety test and the officers were satisfied that I was not intoxicated. However, operating on solely impermissible factors, Officer Lovett arrested me illegally and then later inserted extreme exaggerations in to his depiction of the events. Officer Gutman, in his depiction, cites my slightly slurred sppech which is easily dismissed as my heavy southern accent. Officer Lovett stated that my speech was slow and thick-tongued, again, as the BAC proved beyond any reasonable doubt, I was not intoxicated therefore, the slightly slurred speech can only be attributed to my southern accent.

I have been trying to obtain various exculpatory information via the Freedom of Information Act since 2003. The West Chester Police Dept. has flatly refused all requests unless I obtain permission from the Sentencing Judge. I have written twice asking for such permission and have not yet received any response. I have also filed a Motion to Obtain Grand Jury Transcripts which has not yet been responded to. An FOI to the U.S. Attorney's office has been responded to, however many pages were withheld for no legitimate reasoning. It is questionable what would have been revealed had counsel done discovery.

It is well settled that police do not make DUI arrest that result in BAC results of .000. If this were the case, there would not only be a major public outcry, but it would be wholly apparent that it was a manipulation of law to affect an illegal search and would result in this type of conduct coming under heavy scrutiny.

The fact is that I was returned to my vehicle after the sobriety test thereby in contradiction of the later claim of my

I was returned to my vehicle after a field sobriety test and the officers were satisfied that I was not intoxicated. However, operating on solely impermissible factors, Officer Lovett arrested me illegally and then later inserted extreme exaggerations in to his depiction of the events. Officer Gutman, in his depiction, cites my slightly slurred sppech which is easily dismissed as my heavy southern accent. Officer Lovett stated that my speech was slow and thick-tongued, again, as the BAC proved beyond any reasonable doubt, I was not intoxicated therefore, the slightly slurred speech can only be attributed to my southern accent.

I have been trying to obtain various exculpatory information via the Freedom of Information Act since 2003. The West Chester Police Dept. has flatly refused all requests unless I obtain permission from the Sentencing Judge. I have written twice asking for such permission and have not yet received any response. I have also filed a Motion to Obtain Grand Jury Transcripts which has not yet been responded to. An FOI to the U.S. Attorney's office has been responded to, however many pages were withheld for no legitimate reasoning. It is questionable what would have been revealed had counsel done discovery.

It is well settled that police do not make DUI arrest that result in BAC results of .000. If this were the case, there would not only be a major public outcry, but it would be wholly apparent that it was a manipulation of law to affect an illegal search and would result in this type of conduct coming under heavy scrutiny.

The fact is that I was returned to my vehicle after the sobriety test thereby in contradiction of the later claim of my

intoxication which is further supported by the BAC result.  Thus, the officers could not detain me unless they had more than a reasonable suspicion that would rise to the level of a reasonable probability.  "A hunch is not a reasonable suspicion." See; U.S. v. Mesa, 62 F.3d 159, 162 (6th Cir. 1995) (reversed and remanded due to illegal search from traffic stop).  See also; Terry v. Ohio, 392 U.S. 1 (1968).  The fact that the officers detention was allegedly based upon the premise of a false DUI offense which lead to the illegal search gives heavy weight to my claims coupled with the conflicting stories given by all law enforcement personnel as to when, where and the circumstances surrounding the search and arrest.  There exists evidence of a constitutional violation.

As to counsel's failure to raise any challenge to the search, a very similar question arose in Northrop v. Trippett, 265 F.3d 372 (6th Cir. 2001) in which ineffective assistance of counsel was found where counsel did not file any motion challenging a seizure of evidence.  To not have got through with an already scheduled supression hearing tantamounts into the same result.  The motion for the hearing was rendered useless.  As the Northrop Court stated, "[G]iven the background, it is difficult to imagine what tactical advantage, or cost, could justify [counsel] Braverman's decision to let the stop go without challenge." Id., at 383.  A competent attorney would have tested, at a bare minimum, the officer's motives in the search as well as the contradictory statements by them.  It has been conclusively shown that the DUI arrest was unlawful and

unsubstantiated, that it was only a ploy for an illegal search,
thus, the exception of search incident to lawful arrest would not
apply.  See; Chimel v. California, 395 U.S. 752 (1969); U.S. v.
Sokolow, 490 U.S. 1 (1989) and; Terry, supra.  In the case at
bar, a suppression hearing was scheduled once before and because
of counsel's unpreparedness, had been re-scheduled.  However,
counsel only made a perfunctory motion.  He did not perform
adequate discovery nor was he even remotely prepared at the
second scheduled hearing to competently represent his client.
Thus, there can be no other plausible explaination why any
competent attorney would withdraw from a suppression hearing at
the last minute and advise his client to plead guilty without
even testing the adversarial process.  There can be no question
of counsel's ineffective assistance at this critical stage in the
proceedings.

INEFFECTIVE ASSISTANCE--ADVISING TO PLEAD GUILTY

    Counsel coerced me to plead guilty despite my unwillingness
and objections to do so.  The Supreme Court held in Machibroda v.
U.S., 368 U.S. 487 (1962) that "a guilty plea, if induced by
promises or threats which deprive it of a voluntary act, is
void.  A conviction based upon such a plea is open to collateral
attack."  The Court has never strayed from this holding.  As was
held in Boykins v. Alabama, 395 U.S. 238 (1969); Henderson v.
Morgan, 426 U.S. 637 (1976) and; Brady v. U.S., 397 U.S. 742
(1970), for a plea to be voluntary and intelligently made, a
defendant must be aware of all the facts and circumstances of his
plea.  The defendant in this case was not, counsel's misadvice

cumlative errors and subsequent failures prevented this from
being an intelligent plea. Further, from the statements of
counsel and the prosecutor at the suppression hearing, the
defendant was in fear and utter confusion. It can be conclusively
shown that the 21 U.S.C. § 856 offense was without any basis in
fact or law as applied to the defendant. Moreover, the elements
of this offense that would have had to have been proven beyond a
reasonable doubt simply were not present. It was even stated in
open Court that the application of this offense to the defendant
was the first of its kind and a "novel application." This alone
gives serious doubts as to counsels duty to have challenged this
offense as it did not apply to his client and he was actually
and factually innocent of "maintaining a place to manufacture
drugs." In light of the fact that this was the offense carrying
the more severe penalty and formed the basis of the threats which
induced the involuntary guilty plea, counsel never sought any
defense for his client. Counsel never once challenged this
offense, investigated nor performed any act even perfunctory in
seeking a challenge to this offense. The record will conclusi-
vely show and prove beyond any doubt, from the letters/
documents sent to the Court prior to pleading and sentencing,
that if not for counsel's advice, the defendant would have most
assuredly proceeded to trial. This cannot be seriously disputed,
the defendant has made the required showing of Hill v. Lockhart,
474 U.S. 52 (1985) that he would have went to trial.

INEFFECTIVE ASSISTANCE AT SENTENCING

A review of the sentencing transcripts in regards to the argument concerning drug weight for sentencing purposes will reveal that it was established that the drug weight alleged by the government was erroneous, that, their estimate contained substances that were not marketable and clearly, not consumable. This was the decision facing the Court in which my sentence was to be based. The facts of the lower drug quantity had been established and the stage was set for my counsel to prevail.

The first day of the sentencing hearing it was established that the mixture weight alleged by the government contained ether, and that this was lethal if consumed by the human body, and thus, was easily defined as "waste." See Exhibit __\\__. The next day of sentencing, prosecution erroneously stated that the charged weight was consumable by the human body, even to the point of injection. Exhibt __\\__. Mr. Hudson strayed from the clear facts to pursue other unwarranted arguments that competent counsel would not have pursued. He also stated that he had discussed the argument with me. This statement is patently false and absurd. It is inconceivable that counsel would proclaim greater drug weights than the government. Counsel was so inept, that the Court corrected and admonished him. (Exhibit __()__.) The argument was marketable weight of 2.02 grams, holding a base offense level of 20 versus a mixture containing lethal substances of the weight of 60.72 grams, holding a base offense level of 26.

Counsel, for whatever reason, at this time ceased to be coun-
sel for the defendant, actually incorrectly arguing with the Court
for a higher drug weight, which unquestionably prejudiced the de-
fendant by increasing his base offense level.  There can be no ex-
planation whatsoever for counsel's erratic and incoherent argument
against his own client.  There cannot be any strategic nor logical
explanation for counsel to have advanced an argument which in-
creased his client's sentence.  This goes beyond mere "ineffective
assistance of counsel" and raises serious questions as to counsel's
prejudice against his own client.  This incident alone proves the
denial of counsel at a critical stage in the proceedings which,
pursuant to <u>Lockhart v. Fretwell</u>, 506 U.S. 364 (1993), the error
of counsel did render the result of the proceeding fundamentally
unfair, and does call into question, the validity or fairness of
the trial.  <u>See Glover v. U.S.</u>, 531 U.S. 198 (2001)(any increase
in sentence due to counsel is ineffective assistance).

## THE BLAKELY/BOOKER APPLICATION TO DEFENDANT

The Supreme Court in <u>U.S. v. Booker</u>, 543 U.S. ____(2005) held
that the Sixth Amendment, as construed in <u>Blakely v. Washington</u>,
542 U.S. ____(2004), does apply to the federal sentencing guide-
lines, and the court's past holdings that "any fact (other than a
prior conviction) which is necessary to support a sentence exceed-
ing the maximum authorized by the facts established by the plea of
guilty or a jury verdict must be admitted by the defendant or
proved to a jury beyond a reasonable doubt," or else the Sixth
Amendment is violated" cf. <u>U.S. v. Olivea</u>, No. 03-2126 (6th Cir.

-27-

2/2/05).

The Sixth Circuit, as with the Fourth Circuit, has held that it is not the now advisory nature of the Sentencing Guidelines that makes the substantial rights violation, but the use of facts not admitted by the defendant nor found by a jury beyond a reasonable doubt.  This occurred in the case at bar through the quantity determination and the enhancements.  This Circuit has consistently held this to be "plain error."  See; U.S. v. Milan, 398 F.3d 445 (6th Cir. 2005); U.S. v. Murdock, 398 F.3d 491 (6th Cir. 2005); U.S. v McDaniel, 398 F.3d 540 (6th Cir. 2005); and U.S. v. Harris, 397 F.3d 404 (6th Cir. 2005).

The Court of Appeals went further in U.S. v Barnett, 398 F.3d 516 (6th Cir. 2005).  The Barnett Court made several important and undeniable distinctions in its application of Booker.  The first being that "Booker ... effectuated a 'clear' and 'obvious' change in law by making the Sentencing Guidelines advisory." Barnett, at 526.

Secondly, and as of equal if not more importance, the Barnett Court identified "structural error" with the Booker violation, citing examples where a defendant is denied "certain fundamental rights" and that a defendant is not required to show the prejudice, for the right violated is so substantial and fundamental, prejudice is presumed.  See; In re Winship, 397 U.S. 258 (1970); Gideon v. Wainwright, 372 U.S. 335 (1963); Walker v. Georgia, 467 U.S. 39 (1984); Tuney v. Ohio, 273 U.S. 510 (1927); Sullivan v. Louisiana, 508 U.S. 275 (1993); See also; Manning v. Huffman, 269 F.3d 720 (6th Cir. 2001) and U.S. v. Segines, 17 F.3d 847 (6th Cir. 1994)

(both holding presumption of prejudice was appropriate even if the defendant cannot make a specific showing of prejudice).

"A structural error is a defect affecting the framework within which the trial proceeds, rather than simply an error in the trial process itself." U.S. v. Johnson, 520 U.S. at 468 cf. Barnett, supra. See Brecht v. Abrahamson, 507 U.S. 619 (1993); Arizona v. Fulminate, 499 U.S. 279 (1991).

The class of errors deemed structural are almost always held to be retroactive. See; In re Winship, 397 U.S. 358 (1970); Ivan V v. City of NY, 407 U.S. 203 (1972); Penry v. Lynaugh, 492 U.S. 302 (1989).

Therefore, the retroactivity of Booker to defendant's case should not be a question for the court.

CONCLUSION

The case at bar presents several avenues of available relief. The first and foremost being the failure of counsel to file a requested appeal. The remedy for such a constitutional violation of this magnitude is normally to vacate the judgment and reinstate it allowing the defendant to exercise the right to direct appeal his sentence that he was deprived of by counsel's ineffective assistance.

Secondly, since it has been shown that the defendant did attempt to appeal his sentence within the 10 day period through his letters to the court which contained allegations, had they been construed liberally pursuant to the pro se doctrine, that made

out sufficiently a claim of ineffective assistance of counsel.
These documents that were submitted to the judge not only could
have been construed liberally as a valid notice of appeal, but
also later could have been characterized as a timely filed §
2255 motion for relief.  The court did not afford the defendant
any of the liberal construance doctrine as established by Haines,
supra.  Therefore, violating the long standing doctrine of afford-
ing pro se litigants liberal construcance of their pleadings "no
matter how inartfully pleaded" and despite the "lack of proper
legal citations," if the pleading could have been read to "state
a valid claim," a court is supposed to do just that.  This doc-
trine was not extended to the defendant in this case and repre-
sents a fundamental miscarriage of justice that must be corrected.
In the context of plain error review, this error must be reviewed
before the other underlying constitutional violations as it
"seriously affects the fairness, integrity or public reputation
of the proceedings."  See; U.S. v. Atkinson, 297 U.S. 157 (1936);
and U.S. v. Olano, 507 U.S. 704 (1993); Johnson v. U.S., 520 U.S.
461 (1997); Kotteckos v. U.S., 328 U.S. 750 (1946) and U.S. v.
Bostic, 371 F.3d 865 (6th Cir. 2004).

Alternatively, the fact that the defendant was sentenced based
upon disputed judge-found facts through the mere preponderance of
evidence also represents a substantial Sixth Amendment violation
coupled with the accumulation of errors by counsel at the senten-
cing phase of the proceedings, reveals errors that are "sufficient-
ly egregious and prejudicial" ... to vacate the conviction.  See
Smith v. Murray, 477 U.S. 527 (1986).  The meritorious claims not

raised by counsel and his subsequent failures constitute "cause and prejudice."  This showing can excuse any procedural default. See <u>Murray v. Carrier</u>, 477 U.S. 478 (1986); and <u>Cone v. Bell</u>, 359 F.3d 785, 802-03 (6th Cir. 2004); see also <u>Edwards v. Carpenter</u>, 529 U.S. 446 (2000)(although we have not identified with precision what constitutes "case" to excuse a procedural default, we have acknowledged that in certain circumstances, counsel's ineffectiveness in failing to preserve the claim for review ... will suffice).

wherefore, based upon the foregoing, the defendant prays for relief in the form of a vacation of the sentence and conviction and any further relief the court deems necessary and proper.

Respectfully submitted this __7th__ day of April 2005


Gregory A. Conn
#03599-061
Federal Medical Center
P.O. Box 14500
Lexington, KY 40512


I hereby swear under  penalty of perjury that the foregoing is true and accurate to the best of my knowledge and ability and that the original and _2_ copy(ies) were mailed to the District Court at 100 East Fifth Street, Cincinnatie, OH 45202 on this __7th__ day of April, 2005.


Gregory A. Conn