LIST OF EXHIBITS

A. Decision from US Court of Appeals dated 03/11/05

B. Decision from US District Court dated 03/25/04

C. Refused § 2255

D. Letter to Courts dated 01/19/03

E. BOP Document Detailing State Writ Dates

F. Letter to Courts dated 12/07/03

G. Letter to Courts dated 12/16/03

H. Letter to Courts dated 08/30/02

I. Police Reports

J. DEA Report

K. Government's Response to Suppression that Counsel Advised to Waive

L. BAC Result dated 07/11/02

M. Sentencing Transcripts Pages - 5, 6, 7, and 22

N. Sentencing Transcripts Page 46

O. Sentencing Transcripts Page 65

No. 04-3548

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**F I L E D**

MAR 1 1 2005

LEONARD GREEN, Clerk

UNITED STATES OF AMERICA, )
)
      Plaintiff-Appellee, )
)
v. )    O R D E R
)
GREGORY A. CONN, )
)
      Defendant-Appellant. )
)

Before:  MARTIN, GILMAN, and FRIEDMAN,* Circuit Judges.

    Gregory A. Conn appeals a district court order that denied his motion for an extension of

time in which to file a motion for relief from judgment under 28 U.S.C. § 2255.  This case has been

referred to a panel of the court pursuant to Rule 34(j)(1), Rules of the Sixth Circuit.  Upon

examination, this panel unanimously agrees that oral argument is not needed. Fed. R. App. P. 34(a).

    On September 25, 2002, Conn pleaded guilty to attempting to manufacture

methamphetamine and maintaining a place for the purpose of manufacturing methamphetamine.

Conn was sentenced to concurrent terms of 60 months and 63 months of imprisonment, respectively,

and the district court entered judgment in January 2003.  Conn did not file a direct criminal appeal.

    On March 22, 2004, Conn filed his motion for an extension of time in which to file a petition

for a writ of habeas corpus.  The district court denied the motion.  Conn filed a timely notice of

appeal.

    On appeal, Conn contends that equitable tolling of the applicable limitations period should

apply in this case and identifies claims he intends to present in his prospective § 2255 motion.  The

---

*The Honorable Daniel M. Friedman, United States Circuit Judge for the Federal Circuit, sitting by
designation.

No. 04-3548
- 2 -

government responds that the district court properly denied Conn's motion for an extension of time. Upon consideration, we dismiss the appeal for lack of appellate jurisdiction.

Federal courts have held that they lack jurisdiction to consider the timeliness of a § 2255 motion until a § 2255 motion is actually filed. *See United States v. Leon*, 203 F.3d 162, 164 (2d Cir. 2000); *United States v. Chambliss*, No. 97-1655, 1998 WL 246408, at *1 (6th Cir. May 4, 1998) (unpublished); *In re Application of Wattanasiri*, 982 F. Supp. 955, 957-58 (S.D.N.Y. 1997). Before the filing of a § 2255 motion, no case or controversy is pending, and federal courts do not render advisory opinions. *See U.S. Nat'l Bank of Oregon v. Indep. Ins. Agents of Am., Inc.*, 508 U.S. 439, 446 (1993); *Leon*, 203 F.3d at 164. An exception exists where a pro se litigant's motion for an extension of time, liberally construed, contains allegations sufficient to support a claim under 28 U.S.C. § 2255. *Green v. United States*, 260 F.3d 78, 82-83 (2d Cir. 2001).

Here, Conn's motion for an extension of time in which to file a petition for a writ of habeas corpus contains no references to any claims that might be cognizable under 28 U.S.C. § 2255. *See Green*, 260 F.3d at 84. Before this court, Conn attempts to assert in the first instance claims he intends to present in his prospective § 2255 motion. However, claims not presented in the district court are not properly considered in the first instance on appeal. *See Weinberger v. United States*, 268 F.3d 346, 352 (6th Cir. 2001); *Byrd v. Collins*, 209 F.3d 486, 538-39 (6th Cir, 2000); *Chandler v. Jones*, 813 F.2d 773, 777 (6th Cir. 1987). Under these circumstances, no case or controversy exists until Conn files a motion for relief under § 2255. Accordingly, Conn's appeal must be dismissed for lack of jurisdiction.

For the foregoing reasons, the appeal is dismissed for lack of jurisdiction.

ENTERED BY ORDER OF THE COURT

/Clerk



IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

UNITED STATES OF AMERICA,

            Plaintiff

      v.                      CR-1-02-96-01

GREGORY A. CONN,

            Movant/Defendant

## ORDER

This matter is before the Court upon the Motion for Extension of Time to File Petition for Habeas Relief (doc. no. 28).  The Motion was signed by movant on March 17 or 18, 2004.  The movant was sentenced by this Court on January 10, 2003.  No appeal from the judgment entered January 10, 2003 was taken.  Movant has taken no action to toll the one-year statute of limitations adopted by Congress in the Antiterrorism and Effective Death Penalty Act of 1996.  28 U.S.C. § 2255.

His Motion signed by Movant on March 17 or18, 2004, more than a year after the Judgment became final, is not timely.  *Id.*  The Motion is DENIED.



2

The Court will not issue a certificate of appealability. The Court concludes that none of the issues raised by defendant are debatable among reasonable jurists, could be resolved differently on appeal or are adequate to deserve encouragement to proceed further. *See* 28 U.S.C. § 2253( c); Fed. R. App. P. 22(b); Fed. R. App. P. 24(a)(3); *Sims v. U.S.*, 244 F.3d 509 (6th Cir. 2001).

IT IS SO ORDERED.

_____
Herman J. Weber, Senior Judge
United States District Court

J:\DOCUMENT\2255\connmotiontoextend.wpd

**OFFICE OF THE CLERK**
**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**

JAMES BONINI                                    324 POTTER STEWART U.S. COURTHOUSE
CLERK                                               100 EAST FIFTH STREET
(513) 564-7500                                   CINCINNATI, OH 45202

April 6, 2004

Gregory Allen Conn #03599-061
Federal Medical Center
P.O. Box 14500
Lexington, KY 40512

Mr. Conn:

    The Clerk's Office has received your Petition to Vacate, Set Aside, or Correct Sentence. Attached is a copy of an order by this Court denying your motion to file this petition. Therefore, your petition is being returned to you.

                         Sincerely,

                         James Bonini
                         Clerk

PETITION UNDER 28 USC § 2255 TO VACATE, SET ASIDE, OR CORRECT
SENTENCE BY A PERSON IN FEDERAL CUSTODY

~~AO 243~~ (Rev. 2/95)

| UNITED STATES DISTRICT COURT | District Southern District of Ohio Western Division |
|---|---|

| Name of Movant Gregory Allen Conn | Prisoner No. 03599-061 | Case No. CR-1-02-96-1 |
|---|---|---|

Place of Confinement    Federal Medical Center, P.O. Box 14500, Lexington, Ky. 40512

| UNITED STATES OF AMERICA | V. | Gregory A. Conn |
|---|---|---|
| | | (name under which convicted) |

## MOTION

1. Name and location of court which entered the judgment of conviction under attack  In the District Court of the United States for the Southern District of Ohio

2. Date of judgment of conviction  01/10/03

3. Length of sentence  Sixty-three months (63)

4. Nature of offense involved (all counts)  Count 1 - Attempt to manufacture, distribute, or dispense a Shedule III Controlled Substance: to wit methamphetamine, in violation of Title 21 U.S.C. § § 846, 841 (a)(1). Count 2 - Maintaining a place for the purpose of manufacturing, distributing, or using a Shedule III Controlled Substance, in violation of Title 21 U.S.C. § 856. Two point increased level for dangerous weapon § 2D.1 (b)(1)

5. What was your plea?  (Check one)
   (a) Not guilty ☐
   (b) Guilty ☑
   (c) Nolo contendere ☐

   If you entered a guilty plea to one count or indictment, and not a guilty plea to another count or indictment, give details:
   Count 3 - Substantial risk to human life in violation of 21 U.S.C. § 858. Charge dropped in plea agreement

6. If you pleaded not guilty, what kind of trial did you have?  (Check one)
   (a) Jury ☐
   (b) Judge only ☐

**RECEIVED**

APR 0 5 2004

**JAMES BONINI, Clerk**
CINCINNATI, OHIO

7. Did you testify at the trial?
   Yes ☐    No ☐

8. Did you appeal from the judgment of conviction?
   Yes ☐    No ☐

01/19/03          Case # CR-1-02-096          Gregory Conn 1018964
                                              900 Sycamore St.
                                              Cinn, OH 45202

Honorable Judge Weber,

Hello, Your Honor since our first meeting I have sensed that You possess admirable principles of right and wrong. I feel in my heart Your verdict was based upon integrity. Your experience has bequeathed upon You. I pray each day that my will and strength to push worthless thoughts from my head and replace them with worthy ones will grow. With God's help I'm sure I will triumph.

Your Honor I have grown dissapointed in the United States justice system in many ways. The strategies used and application applied to uphold just Laws are in many ways no better than the crimes comitted. The common use of deciet, trickery, and threats appal me. I realize the rights of would be criminals sometimes makes convictions difficult. But doesn't giving criminals such examples contribute to their worthless ways. If the law constantly uses lies, trickery, and threats? Where is society suppose to get the exemplary examples needed so badly in present times? When Law gives in to ways of the criminals it brings a vast feeling of emptiness over me.

Your Honor there are a few facts concerning my case I feel You should know. There was alot of emphasis based on the accident between a Law Officer and myself and a DUI charge. To my knowledge there was no damage to either vehicle only a light brush occured. There was a large ball field directly to the right of the accident scene in which was active at the time of the accident. Very bright lights shine directly upon the road I was traveling. The patrol car was dark in color and passing me rapidly to my right. The bright lights from the ball field made notice of the patrol car difficult. Upon the light brush with the patrol car I immediately responded in a safe manner. I have three different reports and they all read differently. The only slightly slurred speech was my southern drawl. The breath test concluded a BAC of .000 and if there had been suspicion of drug use?

Why wasn't a blood test performed. I was returned to my vehicle after a sobriety test so it is obvious the officers had concluded I wasn't DUI and there was no threat of a weapon. It was only after being removed from my vehicle a second time and arrested for DUI that my vehicle was searched. The Officer in which I was involved with in the accident stopped the Officer arresting myself on the way to his patrol car with great surprize at my arrest. At that time the Officer arresting me stated to me that if I passed the breath test I would be returned to my vehicle. Then a search of my vehicle was performed on the road side. Officer Lovett admitted to myself that he knew I wasn't DUI. He needed a reason to search my vehicle fore which he had none. I also wrote down the time in which I was read my rights on the form in which I signed stating I had been given rights. This after I had been interrogated by more than one person. I was arrested around 11:30 PM 07/10/02 and I was read my rights at approximately 4:30 AM 07/11/02. I feel these are facts you needed to know.

Concerning counsel provided to myself. That being C. Ranson Hudson. I am deeply dissapointed in the vast neglect of my case by Mr. Hudson. It was like Mr. Hudson was part of the Prosecution. Always waiting until the last possible moment to correspond with myself. Giving me very little if any time to conclude on decisions requiring needed thought. Also waiting until last possible moment to attain crucial information pertaining to my case. These rush jobs used by my counsel gave heavy advantage to Prosecution.

Your Honor I have sat back failing to voice my opinions and objections most of my life. I don't know exactly the reason for doing so at this time. I just felt the need. Thank You for Your time. May the New Year bring Noble Joys to You and Yours.

Yours Truly,





**UNITED STATES GOVERNMENT**
# Federal Bureau of Prisons
*Federal Medical Center*
*3301 Leestown Road*
*Lexington, Kentucky 40511-8799*

April 26, 2004

Inmate Gregory Conn
Reg. No. 03599-061
Bluegrass Unit

Inmate Conn:

In response to your Inmate Request to Staff Member, the following information has been verified regarding time spent on temporary release status via Interstate Agreement on Detainers.

You were released via IAD on May 6, 2003. You were returned to FMC, Lexington, Kentucky, on September 9, 2003. This time has been credited toward your federal sentence.

The 180 day time frame begins upon receipt of the IAD packet by the Prosecutor's Office. Your packet was mailed on April 2, 2003. It was received by Darice Spink, Meade County Attorney's Office on April 4, 2003. The 180 day time limit would have expired on September 30, 2003; however, you received your 10 year state sentence on September 4, 2003. All time frames were met within the Interstate Agreement on Detainers.

If you have any further questions, please come to Records Office Open House on Thursday at 3:00pm.

S. Patton
Legal Instruments Examiner



Gregory A Conn
03599-061 BG
Federal Medical Center
PO BOX14500
Lexington,KY 40512

12/07/03


Honorable Judge Weber,

  Greeting.I am hopeful that You and Yours are in good health and
in high spirits.My name is Gregory A Conn(03599-061).Iwas sentenc
ed in Your court in Janary,2003.My case number is CR-1-02-096.My
Federal Public Defender was C.Ransom Hudson.Unfortunately Your Honor
I have a prediament inwhich I need Your help with.I have been writ
ing to Mr.Hudson trying to aquire a copy of all documentation He
has in my file concerning myself.Including transcripts of all court
appearances.Any that he does not have,Iasked how to uptain them.I
did so in a very cordail matter.Waiting patiently for some type of
response.As of today(12/07/03)I have received no response of any
type.I explained to Mr. Hudson in my last letter that if I receiv
ed no response.I would be writing to You,Your Honor asking for your
assistance with uptaining this information.I have enclosed a copy
of my last letter to Mr.Hudson asking for his help.I beleive that
I have a legal right to this information.Please help myself in up
taining this information.
  I have one more Plea for Your assistance Your Honor.Please extend
my time table of one year after sentencing for any type of filing
to do with my case.I am sincerely asking for at least two months
after receiving all infor mation and documentation,including tran
scripts of all court appearances.I have began trying to learn about
Law and Procedures of Law in the past few months.I need all infor
mation cocerning my case to make any knowledgable decision.Since
Mr.Hudson has not seen fit to respond to any of my request.I am hope
ful that Your Honor will see fit to grant me this request.Thanks,
Your Honor for Your time.May the Holidays be filled with Peace and
Joy for all.


                              Sincerely,

G

12/16/03

03599-061 BG
Federal Medical Center
P.O. Box 14500
Lexington, KY 40512

Honorable Judge Weber,

Greetings, I am very hopeful that You and Yours are in good Health and in high Spirits. I dislike having to call upon You during the Holiday Season. Please except my apology. I have no choice. My name is Gregory A. Conn (03599-061). You presided over my case, Your Honor. That case being CR-1-02-096. I was sentenced in January 2003. I hold great respect for You, Your Honor. Being that You Yourself called upon Prosecution to state their case against myself more than my court appointed attorney (C. Ranson Hudson). Although Mr. Hudson is most likely a fine attorney, he was and most likely still is a very busy man. Your Honor I feel that there was negligence in my defense that may need to be addressed. I am unsure if You recall my case. Myself and my Family wrote to You, Your Honor during the trial proceedings expressing our concern of negligence on the behalf of my defense. I decided to keep Mr. Hudson's counsel after prosecution comforted me expressing that if I fired Mr. Hudson and or went thru with the suppression. That he would see that I received 195 months. Mark my words he added. Myself never being in this kind of trouble I was scared to death and very illiterate to the law and it's procedures.

Your Honor I recently wrote to You asking for help with getting what I have now learned is all Work Product. Also to aquire all transcripts of each and every court appearance. Mr. Hudson has finally decided to send some of the information I was trying to aquire. But leaving out alot of Work Product, I understand that my P.S.I. cannot be sent. But Mr. Hudson's refusal to send all work product excluding the

P.S.I. can only lead me to the conclusion that he has something to hide. Maybe something he doesn't want me to find out. Mr. Hudson also knows the only thing I can file is ineffective counsel. I have been trying to aquire all work product and transcripts for over two months. The time Mr. Hudson has wasted gives me no time to look over my case. And make a decision on whether to file such. I was ignored until recently. I have included a copy of Mr. Hudson's refusal letter. If Mr. Hudson has nothing to hide? Why would he not send all work product? Your Honor I am asking for Your help with this problem.

One again I must also plea for Your help. Please extend my time table of being able to file against my case. At least two months past the time I receive all work product excluding the P.S.I., but including all transcripts of every court appearance. Your Honor I am in great hope that You will find these request fair and just. Happy Holidays. May We All find great joy and peace during the Holiday Season.

Sincerely,

P.S. - As at this time 12/16/03 at 7:04 PM I am Pro se in my federal case CR-1-02-096. Acting counsel for myself. With holding the right to attain counsel.

H

CR-02-96

08/30/02   src
Gregory A Conn 1018964
900 Sycamore St.
Cinn., OH 45202

Honorable Herman J. Weber,

My name is Gregory A Conn. My case number is CR-1-02-096. Sorry to use up so much of time, but my rights are being violated very badly. The letter I just wrote to you asking for new counsel. Your Honor I need more time on my suppression period. My so called counsel C. Ransom Hudson came to visit with me last night around 8:30 PM. I thought this seemed rather odd. Upon starting conversation Mr Hudson explained that he was a day late and a dollar short. Upon further explanation I was told that Mon. 08/02/02 was the last day for suppressions. As I explained in my first letter I was under the assumption my next court date was 08/20/02 and that I did not know of the nature of this court date. Your Honor at or around 8:30 PM 08/29/02 was the first I had heard from my appointed Public Defender C. Ransom Hudson explaining anything from my last court appearance which was 08/14/02 or anything about my next court appearance. I explained to Mr Hudson that this was the first I knew about this suppression period. With his usual

R1F

court appearance. This was but one instance showing very plainly that Mr. Hudson is very ineffective counsel with my case. Saying that he had explained any of dates pertaining to suppression is a bold face lie. Upon Mr. Hudson stating this I exploded. I was through listening to anything Mr. Hudson had to say. I stated that he was lying and that I had written Honorable Herman J. Weber for different counsel. Also stating I had nothing further to discuss with him. There are plenty of witnesses to this for I stated this very loudly. This is my life we are talking about I deserve way more than this.

Respectfully Yours,



| VICTIM | OFFENSE | INCIDENT DATE/TIME |
| --- | --- | --- |
| | 2925.11  Drug Abuse | (MM/DD/YY/TTTT)  16 |

On 7-10-02 at 2335 hrs, I was traveling west bound on Union Centre BLVD from Cinti Dayton in the right hand lane. The defendant operating his white 97 Ford f-150 was also west bound in the left lane and merged into my vehicle striking the drivers side rear corner fend I pulled over onto the side of the road and the defendant pulled over behind me

I made contact with the defendant His speech was slightly slurred and his eyes were glassy. I noticed he had a large amount of property in the front of his vehicle which made it difficult to see if he had any weapons close by. He also had a large amount of property in the rear of the truck I saw an opened bottle of beer in the cab of the vehicle.

After getting the suspect out of the vehicle, I checked the vehicle for weapons and any other open containers In a fanny pouch immediately next to where the defendant was sitting was a loaded Smith + Wesson .357 Caliber revolver, two baggies of methamphetamine, a straw with white powder in it, and a glass pipe.

At this point the suspect was arrested for ccw + drug abuse. The defendant then stated "I'm the runner not the cook" We checked the rear of the truck and found lighter fluid, acetone, antihistamine tablets, and jars with a clear fluid with white powder on the bottom of the jar. In addition to the chemicals were several mason jars, plastic gasoline cans, & plastic tubing.

Further search of the cab of the vehicle revealed that there were two additional baggies of methamphetamine in the defendant's luggage. On the center console was an additional glass pipe and an additional straw with white powder on it. $717.00 was also found

The defendant was charged with Drug Abuse 2925.11, Drug Trafficking 2925.03, Drug Paraphenalia 2925.14, CCW 2923.12.

| REASON CLEARED | A ☐ DEATH OF OFFENDER | D ☐ VICTIM REFUSED TO COOP. | G ☐ ARREST - JUVENILE | J ☐ CLOSED | DATE CLEARED |
| --- | --- | --- | --- | --- | --- |
| | B ☐ PROSECUTION DECLINED | E ☐ JUVENILE/NO CUSTODY | H ☐ WARRANT ISSUED | K ☐ UNFOUNDED | |
| | C ☐ EXTRADITION DENIED | F ☐ ARREST - ADULT | I ☐ INVEST. PENDING | U ☐ UNKNOWN | |

| REPORTING OFFICER | C.C. | BADGE NO. 27 | DATE 7-11-02 |
| --- | --- | --- | --- |
| APPROVING OFFICER | | BADGE NO. | DATE |

OFFENSE
2925.11 Drug Abuse

INCIDENT DATE/TIME
(MM/DD/YY/TTTT)    17

Illegal possession of chemicals for the manufacture of a controlled substance and DuI 4511.19

The DEA returned our calls the following morning and expressed interest in adopting the case. They took all the evidence with the exception of the $717.00 and the firearm

The total weight of the 4 bags of methamphetamine (TPW) was 5.18 grams

REASON CLEARED   A □ DEATH OF OFFENDER   D □ VICTIM REFUSED TO COOP.   G □ ARREST - JUVENILE   J □ CLOSED   DATE CLEARED
B □ PROSECUTION DECLINED   E □ JUVENILE/NO CUSTODY   H □ WARRANT ISSUED   K □ UNFOUNDED
C □ EXTRADITION DENIED   F □ ARREST - ADULT   I □ INVEST. PENDING   U □ UNKNOWN

REPORTING OFFICER   LC        BADGE NO. 87   DATE 2-11-02
APPROVING OFFICER            BADGE NO.   DATE

RATIVE SUPPLEMENT

PG. 1 OF 2

| OFFENSE | INCIDENT NUMBER |
|---|---|
| DUI | |

INCIDENT DATE/TIME (MM/DD/YY/TTTT) 7-10-02/2340

ON OR ABOUT THE LISTED DATE AND TIME I RESPONDED TO THE LISTED LOCATION FOR AN AUTO ACCIDENT INVOLVING A PATROL CAR. UPON MY ARRIVAL I SPOKE TO P.O. GUTMAN WHO WAS INVOLVED IN THE CRASH. P.O. GUTMAN STATED, HE WAS TRAVELING WESTBOUND ON UNION CENTRE BLVD FROM CIN-DAYTON RD. WHEN MR. CONN (WHO WAS ALSO TRAVELING WESTBOUND) ON UNION CENTRE BLVD. MERGED FROM THE LEFT LANE INTO HIS PATROL CAR WHICH WAS IN THE RIGHT LANE. THE CONTACT MADE WAS A SIDESWIPE SAME DIRECTION, THE RIGHT FRT CORNER OF MR. CONN'S TRUCK TO THE LEFT REAR OF THE PATROL CAR. WHEN I ASKED MR. CONN, HE STATED, THAT IS WHAT HAPPENED, I JUST DIDN'T SEE THE OTHER CAR. MR. CONN'S SPEECH WAS SLOW AND THICK TONGUED. P.O. GUTMAN ASKED MR. CONN FOR HIS INSURANCE CARD AND HE BEGAN LOOKING FOR IT IN HIS GLOVE BOX, IT TOOK MR. CONN APROX. TWO MINUTES TO RETRIEVE HIS INSURANCE CARD, WHILE MR. CONN WAS RETRIEVING HIS CARD, P.O. GUTMAN NOTICED AN OPEN CONTAINER OF BEER (BOTTLE) IN THE FRT SEAT WITH MR. CONN. AT THIS POINT I ASKED MR. CONN IF HE HAD BEEN DRINKING ANY ALCOHOL TONIGHT AND HE STATED, YES. I ASKED HOW MUCH AND HOW LONG AGO. MR. CONN REPLIED A COUPLE OF BEERS EARLIER. I THEN ASKED MR. CONN TO STEP OUT OF HIS TRUCK, AS HE EXITED MR. CONN STUMBLED AND USED THE TRUCK DOOR AND SEAT TO STEADY HIMSELF. I TURNED MY ROTATING LIGHTS OFF ON MY CAR AND POSITIONED MYSELF AND MR. CONN BETWEEN MY CAR AND HIS TRUCK, I ASKED MR. CONN IF HE WOULD PERFORM A COUPLE OF TESTS FOR ME, HE STATED YES. I BEGAN THE HGN TEST ON MR. CONN, RIGHT AWAY I NOTICED MR. CONN'S PUPILS WERE FIXED VERY SMALL, AND DID NOT RESPOND TO MY LIGHT. DURING THE TEST MR. CONN'S EYES WOULD NOT SMOOTHLY FOLLOW MY PEN. AFTER I FINISHED THE HGN WE MOVED ON TO THE WALK AND TURN. WHILE I WAS EXPLAINING TO MR. CONN THE INSTRUCTION ON HOW TO PERFORM THE TEST HE BEGAN TO WALK AND COUNT HIS STEPS. I WAS STANDING APROX. FOUR STEPS DIRECTLY IN FRONT OF MR. CONN, I PUT MY HANDS UP AND TOLD HIM TO STOP UNTIL I WAS FINISHED WITH THE INSTRUCTIONS, WHEN I FINISHED THE INSTRUCTIONS I ADVISED MR. CONN TO START. MR. CONN MADE FOUR STEPS CORRECT THEN STOPPED TOUCHING HEEL TO TOE, AT THE TURN MR. CONN LOST HIS BALANCE AND STARTED HOPPING AROUND IN A HALF CIRCLE TO COMPLETE THE TURN. MR. CONN USED HIS ARMS TO BALANCE WHILE HOPPING THROUGH HIS TURN. ON HIS WAY BACK MR. CONN MADE TWO CORRECT STEPS THEN BEGAN TO WALK OFF THE LINE AND NOT TOUCH HEEL TO TOE FOR THE REST OF HIS STEPS. NEXT I EXPLAINED TO MR. CONN HOW TO PERFORM THE ONE LEG STAND, MR. CONN WAS SWAYING WHILE I GAVE HIM THE INSTRUCTIONS. ONCE HE BEGAN THE TEST MR. CONN BEGAN HOPPING AND USING HIS ARMS TO BALANCE WHILE PERFORMING THE TEST.

| ON CLEARED | A ☐ DEATH OF OFFENDER | D ☐ VICTIM REFUSED TO COOP. | G ☐ ARREST - JUVENILE | J ☐ CLOSED | DATE CLEARED |
|---|---|---|---|---|---|
| | B ☐ PROSECUTION DECLINED | E ☐ JUVENILE/NO CUSTODY | H ☐ WARRANT ISSUED | U ☐ UNFOUNDED | |
| | C ☐ EXTRADITION DENIED | F ☐ ARREST - ADULT | I ☐ INVEST. PENDING | U ☐ UNKNOWN | |

| TING OFFICER | | BADGE NO. | |
|---|---|---|---|
| CORETT | | | |

| VING OFFICER | | BADGE NO. L68 | DATE 7-11-02 |
|---|---|---|---|
| | | BADGE NO. | |

| OFFENSE | INCIDENT DATE/TIME (MM/DD/YY/TTTT) |
|---|---|
| DUI | 5-10-02 / 2340 |

I THEN ASKED MR. CONN TO HAVE A SEAT IN MY CAR, ON MY WAY TO HIS TRUCK TO RETRIEVE THE OPEN CONTAINER OF BEER, P.O. GUTMAN ADVISED ME THAT A GUN WAS ON THE SEAT AND SOME TYPE OF WHITE POWDER LIKE SUBSTANCE. I WENT BACK TO MY CAR AND ASKED MR. CONN TO EXIT MY CAR. I TOLD MR. CONN TO PUT HIS HAND BEHIND HIS BACK AND PUT HAND CUFFS ON HIM. I THEN ASKED MR. CONN WHY HE HAD A LOADED GUN WITH HIM AND HE JUST SHRUGGED HIS SHOULDERS. I ASKED HIM WHAT THE WHITE SUBSTANCE WAS AND HE STATED, METHAMPHETAMINE. I THEN ASKED MR. CONN IF THERE WAS ANYTHING ELSE IN THE TRUCK THAT MIGHT HURT MYSELF OR ANY OTHER OFFICER, HE STATED, I DON'T THINK SO. I ASKED HIM TO BE MORE SPECIFIC, IT DID NOT SEEM LIKE HE WAS SURE OF HIS ANSWER. MR. CONN STATED, THERE WAS EQUIPMENT AND CHAPTER'S IN THE BACK OF HIS TRUCK TO MAKE METHAMPHETAMINE. I THEN SEARCHED MR. CONN'S PERSON AND PLACED HIM IN THE BACK OF MY CAR AND TRANSPORTED HIM TO THE STATION FOR PROCESSING FOR DUI AND POSSESSION OF DRUGS, CCW AND THE OTHER CHARGES. DURING PROCESSING I GAVE MR. CONN AN OPTION TO TAKE AN INTOXILYZER TEST AND HE AGREED. MR. CONN'S TEST RESULT WAS .060. I THEN ASKED MR. CONN IF HE HAD TAKEN ANY DRUGS TONIGHT AND HE STATED, YES. I ASKED HIM WHAT, HE STATED, I SMOKED SO METH BEFORE I LEFT IN MY TRUCK. I THEN CONTINUED TO PROCESS MR. CONN. MULTIPLE TIMES MR. CONN STATED TO ME, I'M ONLY A RUNNER, I DON'T COOK OR SELL THE METH, I ONLY MOVE THE EQUIPMENT FROM PLACE TO PLACE.

| REASON CLEARED | A ☐ DEATH OF OFFENDER | D ☐ VICTIM REFUSED TO COOP. | G ☐ ARREST - JUVENILE | J ☐ CLOSED | DATE CLEARED |
|---|---|---|---|---|---|
| | B ☐ PROSECUTION DECLINED | E ☐ JUVENILE/NO CUSTODY | H ☐ WARRANT ISSUED | K ☐ UNFOUNDED | |
| | C ☐ EXTRADITION DENIED | F ☐ ARREST - ADULT | I ☐ INVEST. PENDING | U ☐ UNKNOWN | |

| REPORTING OFFICER | BADGE NO. | DATE |
|---|---|---|
| LOVETT | 148 | 7-11-02 |
| APPROVING OFFICER | BADGE NO. | DATE |

## REPORT OF INVESTIGATION

*(Continuation)*

| | |
|---|---|
| | 3. File Title<br>CONN, Gregory A. |
| 4.<br>Page | |
| 5. Program Code<br>SUMMARY REPORT | 6. Date Prepared<br>07/15/02 |

DETAILS

1.  On July 10, 2002, at approximately 11:40 p.m., Officer Joe
    Gutman, of the West Chester, Ohio, Police Department, was
    on duty and patrolling in the area of Union Centre
    Boulevard and Cincinnati-Dayton Road, West Chester, Ohio.
    Gregory Allen CONN was operating a 1997 white Ford F-150
    pickup truck, bearing Kentucky registration 3723FB, which
    was registered to him, on Union Centre Boulevard. CONN's
    vehicle struck the West Chester Police vehicle operated by
    Officer Gutman on Union Centre Boulevard, near Cincinnati-
    Dayton Road. CONN was arrested by Officer Gutman on Ohio
    State Charges of Driving While Intoxicated. CONN was
    processed and housed at the Butler County Jail, Hamilton,
    Ohio.

2.  The Ford F-150 was towed to the West Chester Police Impound
    Lot, where an inventory of the vehicle was conducted.
    During the inventory, a .357 caliber revolver was located
    in the cab of the vehicle, in a location readily accessible
    to CONN. Additionally, items associated with a clandestine
    methamphetamine laboratory, i.e., rubber tubing, exhaust
    fan, a respirator, a "gas generator", and various chemicals
    associated with the production of methamphetamine, were
    also located by West Chester Police Officers.

3.  On July 11, 2002, the West Chester Police Department
    contacted the Cincinnati Resident Office and advised of a
    possible clandestine methamphetamine laboratory which was
    located in the Ford F-150. CONN was then additionally
    charged with violations of the Ohio Revised Code, which
    included: Carrying a Concealed Weapon, Trafficking in
    Drugs, Illegal Assembly and Possession of Chemicals for the
    Manufacture of Drugs, and Possession of Drugs and Drug
    Paraphernalia.

**DEA SENSITIVE**
Drug Enforcement Administration

1 - Prosecutor

This report is the property of the Drug Enforcement Administration.
Neither it nor its contents may be disseminated outside the agency to which loaned.

Previous edition dated 8/94 may be used.

**FILED**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

SEP 1 2 2002

KENNETH J. MURPHY, Clerk
CINCINNATI, OHIO

UNITED STATES OF AMERICA　　　　:　　CRIMINAL NO. 1-02-096

　　　　　　　　　　　　　　　　　　:

　　　　　　　　　　　　　　　　　　:　　J. WEBER

　　　　　　　　　　　　　　　　　　:

　　　　　v.　　　　　　　　　　　　:

　　　　　　　　　　　　　　　　　　:

　　　　　　　　　　　　　　　　　　:

GREGORY A. CONN　　　　　　　　　 :　　UNITED STATES'S RESPONSE TO

　　　　　　　　　　　　　　　　　　:　　DEFENDANT'S MOTION TO

　　　　　　　　　　　　　　　　　　:　　SUPPRESS EVIDENCE

　　　　　　　　　　　　　　　　　　:

- - - - - - - - - - - - - - -

In the instant action, Defendant Gregory A. Conn (hereinafter "the defendant") moves to suppress any and all evidence, including physical evidence and statements, based on alleged violations of his Fourth and Fifth Amendment rights. We request that this Court deny the defendant's motion on the ground that it is without merit.

MEMORANDUM

After lawfully taking custody of a vehicle, officers may conduct a warrantless inventory search. Such inventory searches serve to: 1) protect the owner's property while it is in the custody of the police, 2) insure against claims of lost, stolen, or vandalized property, and 3) guard the police from danger. Colorado v. Bertine, 479 U.S. 367, 372 (1987); United States v. Ford, 872 F.2d 1231, 1240 (6th Cir. 1989). An inventory search may not be conducted for purposes of investigation; rather, the

search must be conducted according to standard police procedures. See Florida v. Wells, 495 U.S. 1, 5 (1990); Bertine, 479 U.S. at 374 n.6; South Dakota v. Opperman, 428 U.S. 364, 372 (1976).

In this case, the defendant was arrested on July 10, 2002, after he struck a patrol officer's vehicle while driving under the influence of alcohol. Subsequent to his arrest, the defendant's Ford F-150 was towed to the West Chester Police Impound lot and an inventory search of the vehicle was conducted. It is at that time that officers found a large number of items in the truck, including rubber tubing, an exhaust fan, a respirator, etc. Taken alone, these items do not appear dangerous and would only have to be separately inventoried. However, as a whole, the items indicated that the defendant was operating a clandestine methamphetamine laboratory. The officers also found a .357 caliber revolver in the cabin of the truck.

The defendant's motion fails because he cannot show that the West Chester Police Department's inventory search of the Ford F-150 was performed outside the scope of standard police policies.

Next, the defendant asserts that any statements that he made to the West Chester Police should also be suppressed. This assertion should also fail because at the time of his arrest the defendant was provided his rights, yet still chose to inform the officer that the truck contained a methamphetamine laboratory and that many of the items that were found were recently purchased.

2



```
INTOXILYZER - ALCOHOL ANALYZER
MODEL 5000          SN 68-001253
07/11/02

CITATION NO=28439
SUB NAME=COHN,GREGORY ALLEN
SUB DOB =06/06/63
SUB SEX =MALE
DRIV LIC=KY/C951538350
TEST DATE=
PERMIT NO=7650503

TEST        %BAC        TIME
AIR BLANK   .000        00:51
SUBJECT TEST .000       00:51
AIR BLANK   .000        00:52
```

Conn, Gregory A.
SUBJECT'S NAME

2340
TIME FIRST OBSERVED

INSTRUMENT LOCATION
(CPD)

P.G. Platt 148
OPERATOR

ADDITIONAL INFORMATION AND OR REMARKS

1    which is then sent to the lab.

2    So there's not a separate -- there's not a separate

3    baggie, so to speak, that would have an actual amount versus a

4    mixture which would have the liquid meth.  There's the liquid

5    meth in which you look at it and then they extract from that,

6    the chemist extracts from that an amount in which he would deem

7    to be actual or pure meth.

8    THE COURT:  Well, from the report, the clear liquid in

9    the bottles was ether.

10    MR. PARKER:  No -- no, Your Honor.  It was 60. --

11    THE COURT:  Well, show me in the report where it tells

12    me that there was a bottles of methamphetamine.

13    MR. PARKER:  Well, Your Honor, I think what Probation

14    simply did is where it noted in paragraph 18 --

15    THE COURT:  I am looking at paragraph 15, I'm looking

16    at paragraph 14, I'm looking at paragraph 18.  And it's the

17    conclusion, not a statement of fact, and I need to know the

18    type of container.  It says here it should be noted that

19    laboratory analysis revealed the presence of ether in the clear

20    liquid in the glass jars that were located in the bed of the

21    truck.  And I thought that's where this mixture was, but it's

22    ether.

23    MR. PARKER:  Your Honor, the ether which would be in

24    the glass jars is part of the process in which it takes to make

25    methamphetamine.

```
 1            THE COURT:  Well, did they take this -- had he had the
 2   opportunity to combine them yet?  See, that's the point.  It
 3   has to be a mixture before I can accept it.
 4            As I visualize it, so I understand it, I have 2.2
 5   grams of methamphetamine here in a bag.  I've got bottles of
 6   ether.  Now, what I want to know is are there glass jars of
 7   methamphetamine ready to be distributed?  That's what I want to
 8   know.
 9            MR. PARKER:  Yes, Your Honor.  In the report --
10            THE COURT:  Well, I don't -- it isn't in the report.
11            MR. PARKER:  The report just does not simply read that
12   the analysis -- where he stated in paragraph 18 an analysis of
13   the substance that contained 60.72 grams of a substance that
14   contained methamphetamine, he just simply did not describe what
15   it was in, Your Honor.
16            THE COURT:  Do you have the report?
17            MR. PARKER:  Yes, Your Honor.
18            THE COURT:  Where is it?
19            MR. PARKER:  Oh, it's not in the report as far as what
20   the substance --
21            THE COURT:  Where is the report?  I've got to have
22   some evidence on this point.
23            MR. PARKER:  May I approach Your Honor with the lab
24   reports?
25            THE COURT:  Sure.
```

1            Does it show the -- I mean, these are critical

2    sentencing facts that I have to establish to my satisfaction by

3    at least the preponderance of the evidence.  The report doesn't

4    help me.

5            MR. PARKER:  Yes, Your Honor.  This is the agent's

6    reports.

7            THE COURT:  The agent's report?  Well, let me see it.

8    I want to know -- you said the lab report.

9            MR. PARKER:  These are the lab reports.

10           THE COURT:  Well, it refers to Exhibit 1.1.  What does

11   1.1 look at -- look like?  Do we have a picture of it or

12   anything?

13           MR. PARKER:  Yes, Your Honor.  May I approach?

14           THE COURT:  Sure.

15           And I've got 1.2 and exhibit -- then there's an

16   Exhibit 2.

17           MR. PARKER:  May I approach, Your Honor?

18           THE COURT:  Sure.

19           Now, are these all different reports or are they the

20   same report?

21           MR. PARKER:  Different reports, Your Honor.

22           THE COURT:  All right.

23           MR. PARKER:  I haven't shown them to defense counsel.

24           THE COURT:  Okay.

25        (Mr. Parker showed documents to defense counsel, then

SMITH - DIRECT

1    a methamphetamine lab, several processes -- another thing, if I

2    may, Your Honor, to clear up about the ether, an ether is a

3    chemical that is used or one of the chemicals that can be used

4    in the production of meth.  The way ether is used is a solvent

5    to extract the methamphetamine from the previous stage of

6    production.  And once this methamphetamine is extracted into

7    the ether, then it is considered methamphetamine base.  That's

8    why you're seeing ether in these reports because it is -- it

9    was the solution to extract the ether.  So the ether and the

10   methamphetamine -- the ether and the methamphetamine base are

11   as one.  The last step -- this is the step previous to the

12   final product.  The final product is then extracted from this

13   ether and methamphetamine base substance.

14          Just as exhibit -- let's get to the exhibit.

15          Anyway, a hydrogen chloride gas is produced with salt

16   and sulfuric acid or aluminum foil and muriatic acid will

17   produce a hydrogen chloride gas.

18          MR. PARKER:  If I can interject, Your Honor, for one

19   second, I think I have something that will also be helpful for

20   the Court while he's explaining.

21          THE COURT:  That's fine.

22          THE WITNESS:  This salt and sulfuric acid, hydrogen

23   chloride gas, in other words, is this -- is then pumped into

24   this final solution of ether and methamphetamine base.

25          MR. PARKER:  Excuse me, Rex.

```
1                         PROCEEDINGS

2          (In open court at 2:05 p.m.)

3              THE COURT:  Is the United States ready to proceed?

4              MR. PARKER:  Yes, Your Honor.

5              THE COURT:  Defense ready to proceed?

6              MR. HUDSON:  Yes, Your Honor.

7              THE COURT:  I have a question that I'd like to ask the

8    United States, and that is that the liquid that was sent to the

9    lab, what happens to the liquid in the manufacturing process?

10   Is it thrown away?  What --

11             MR. PARKER:  The liquid, Your Honor, has to be

12   destroyed.

13             THE COURT:  So it's wastewater, is that what we're

14   talking about, or what is it?  Waste?

15             MR. PARKER:  No, Your Honor.  It's actually meth oil.

16   It's actually methamphetamine.  If you injected the liquid into

17   your body, you would have a reaction just as if you had

18   injected the -- smoked the methamphetamine rocks.

19             THE COURT:  All right.  So then the liquid can be used

20   by an addict to achieve a high.

21             MR. PARKER:  Your Honor, the liquid is not what the

22   addict would prefer, but it is a form of methamphetamine.

23             THE COURT:  I mean, it's question -- how can they

24   separate out --

25             MR. PARKER:  It's like beer, Your Honor.  You have --
```

1    Mr. Hudson, I'm just asking you the accuracy of the

2    computation.

3                MR. HUDSON:  No.

4                THE COURT:  It's 60.72 under the one theory and 2.2

5    under the other?

6                MR. HUDSON:  I do not get those figures.

7                THE COURT:  What do you get?

8                MR. HUDSON:  I get 70.3.

9                THE COURT:  These are my -- the figures that I've

10   used:  10.2, 24.3, 24.5, 1.3, and .42.

11               MR. HUDSON:  I did not add the .42.  That would give

12   it 70.72.

13               The original when I -- in my presentation I said it

14   was 71.6.  My -- that was wrong because I added 1.3 twice.

15               THE COURT:  You have those same figures, 10.2, 24.3,

16   24.5, 1.3, and .42?

17               MR. HUDSON:  Yes, Your Honor.

18               THE COURT:  And those add up, you say --

19               MR. HUDSON:  I don't have a calculator, but my math it

20   came up to 70.72.

21               THE COURT:  And mine says 60.72.

22               We have a calculator over here, Mr. Hudson.  Do you

23   want to --

24               MR. HUDSON:  No.  I got it now.  Okay.

25               THE COURT:  60.72?